Joseph F. Halloran (OBA #31905)
James K. Nichols
Joy P. Parker
**JACOBSON, MAGNUSON, ANDERSON & HALLORAN P.C.**
180 East Fifth Street, Suite 940
St. Paul, MN 55101
Phone: (651) 644-4710
Email: jhalloran@thejacobsonlawgroup.com

Audrey Gardner (OBA #31373)
**GENERAL COUNSEL, EASTERN SHAWNEE TRIBE OF OKLAHOMA**
10100 S. Bluejacket Rd.
Wyandotte, OK 74370
Phone: 918-238-5151
Email: adixon@estoo.net

Attorneys for Plaintiff

---

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

---

(1) THE EASTERN SHAWNEE TRIBE OF OKLAHOMA,

Plaintiff,

v.

(1) GENTNER DRUMMOND, in his capacity as Attorney General of Oklahoma,
(2) DOUGLAS PEWITT, in his capacity as District Attorney for District 13, Oklahoma,

Defendants.

**VERIFIED COMPLAINT**

Civil No. 23-cv-00105-GKF-SH

---

For its Verified Complaint against the Defendants, Plaintiff Eastern Shawnee Tribe of Oklahoma alleges the following:

## INTRODUCTION

This is a suit for declaratory and injunctive relief by which Plaintiff, the Eastern Shawnee Tribe of Oklahoma, seeks 1) a declaration that the Eastern Shawnee Reservation was established under the Treaties of 1831 and 1832, as modified by the Treaty of February 23,1867, has never been disestablished, and exists today, 2) a declaration that the State Defendants must give effect to the United States Supreme Court ruling in *McGirt v. Oklahoma,* 3) a declaration that State criminal prosecutions of Indian defendants for conduct on the Eastern Shawnee Reservation violates both federal law and the sovereignty and ability to self-govern of the Eastern Shawnee Tribe of Oklahoma, and 4) an order prohibiting the State Defendants from attempting to assert criminal jurisdiction over Indians for conduct occurring in Indian country.

## JURISDICTION AND VENUE

1. This action is brought by the Eastern Shawnee Tribe of Oklahoma, a federally-recognized Indian tribe, for declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 for the purpose of determining a question of actual controversy between the parties and for equitable relief as requested and described herein.

2. The matter in controversy thus arises under the Constitution, laws, and treaties of the United States. This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1362.

3. This action seeks to enjoin the State Defendants from exercising jurisdiction reserved exclusively to the federal government and the Eastern Shawnee Tribe under the laws and treaties of the United States. It presents an actual justiciable controversy between Plaintiff and Defendants with adverse interests, which is not possible of settlement without a judicial determination declaring the rights and obligations of the parties. Further, said controversy admits

of an immediate and definitive determination of the legal rights of the parties and is capable of specific relief based upon the allegations below.

4. Although this action challenges the legality of state criminal proceedings, abstention by this Court under the *Younger* doctrine is not appropriate because whether a state has criminal jurisdiction in Indian country is a matter of federal law "in an area in which federal interests predominate" and the importance of any State interest in the state litigation is "minimal." *Seneca-Cayuga Tribe of Oklahoma v. State ex Re. Thompson*, 874 F.2d 709, 714 (10th Cir. 1989).

5. Venue is proper in this Court under 28 U.S.C. § 1291(b) because all of the actions from which the claims arise occurred or are occurring within the Northern District of Oklahoma.

**PARTIES**

6. The Eastern Shawnee Tribe of Oklahoma ("Eastern Shawnee Tribe" or "Tribe") is a federally recognized Indian Tribe, party to Treaties with the United States in 1831 (7 Stat. 351), 1832 (7 Stat. 411), and on February 23, 1867 (15 Stat. 513). The Eastern Shawnee Tribe is organized under a Constitution and Bylaws adopted by the members of the Tribe and approved by the Secretary of the United States Department of the Interior on November 7, 1939, pursuant to the Thomas-Rogers Oklahoma Indian Welfare Act of June 26, 1936 (25 U.S.C. Ch. 45A). The Tribe appears on the Federal List Act of "*Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs*" published pursuant to Section 104 of the Act of November 2, 1994, PL 103-454, 108 Stat. 4791, 4792.

7. Defendant Gentner Drummond is the Attorney General of the State of Oklahoma. Defendant Drummond is sued in his official capacity. The Attorney General is the chief legal and law enforcement officer of the State and is responsible for representing the State in criminal appeals.

8. Defendant Douglas Pewitt is the District Attorney for Oklahoma District 13, which includes the Eastern Shawnee Reservation. Defendant Pewitt is sued in his official capacity. The District Attorney is responsible for representing the State in prosecution of criminal matters arising in their District, subject to any limitations imposed by federal law.

**FACTUAL BASIS FOR CLAIMS**

9. The Eastern Shawnee Tribe occupies and exercises sovereign governmental authority over its Reservation, set apart for its use and occupation in the Indian Territory by the Treaties of 1831 and 1832, as modified by the Treaty of February 23, 1867. *See* Treaty with the Seneca, Mixed Seneca and Shawnee, Quapaw, etc. 1867, 15 Stat. 513, Feb. 23, 1867, *reprinted in* Kappler, Charles, *Indian Affairs: Laws and Treaties*, Vol. 2, 960 (Government Printing Office: 1904) ("1867 Treaty").

10. The Eastern Shawnee Tribe was one of the first tribes to remove to and settle in the Indian Territory in an area that now comprises northeastern Oklahoma.

11. The Eastern Shawnee Treaties of 1831, 1832, and 1867 reflect treaty promises made by the United States and bargained for by the Eastern Shawnee Tribe—that the reservations in the West would be their permanent and undisturbed homeland, resulting in the establishment of the Eastern Shawnee Reservation.

12. The General Allotment Act of 1887 was made applicable to the Eastern Shawnee Reservation in four rounds of allotments between 1888 and 1902.

13. No Congressional act implementing the allotment policy of the United States contains language purporting to disestablish the Eastern Shawnee Reservation.

14. Under *McGirt v. Oklahoma*, 140 S. Ct. 2453 (2020), an Indian reservation can only be disestablished by clear expression of Congressional intent, and no act of Congress contains a clear expression of Congressional intent to disestablish the Eastern Shawnee Reservation.

15. The State Defendants are unlawfully asserting State criminal jurisdiction over Indian defendants in the Indian country of the Eastern Shawnee Tribe and its neighboring tribes. The State Defendants refuse to accept a growing number of Ottawa County District Court Orders ruling that the Eastern Shawnee Reservation and other neighboring reservations are Indian country under *McGirt* and dismissing those cases for lack of State jurisdiction. Rather, the State has expended untold resources and time bringing repeated appeals with arguments that ignore the holding in *McGirt* and its concessions before the District Court that it could find no evidence that the Miami, Ottawa, and Eastern Shawnee reservations have ever been disestablished. At no point has the State offered any evidence of a clear expression of Congressional intent to disestablish the Eastern Shawnee Reservation.

16. On December 30, 2020, the District Attorney of Ottawa County charged Harry Hull, a member of the Miami Tribe of Oklahoma, with several crimes, including unauthorized use of a vehicle after former conviction of a felony, occurring on the Eastern Shawnee Reservation.

17. The Eastern Shawnee Tribe was not notified of the Ottawa County District Court proceedings relating to its Reservation, but on February 3, 2021, the State nevertheless stipulated to the Ottawa County District Court that 1) Hull is an Indian, and 2) Hull's alleged criminal activity occurred within the boundaries of the Eastern Shawnee Reservation, and 3) there is no evidence that the Eastern Shawnee Reservation has ever been disestablished. *See* Court Order with Findings of Fact and Conclusions of Law, *State v. Hull*, No. CF-2019-218, (Feb. 11, 2021).

18. The State offered no evidence of a clear expression of Congressional intent to disestablish the Eastern Shawnee Reservation and stipulated to the Ottawa County District Court that there was no evidence that the Reservation had been disestablished. Transcript of Proceedings at 5, *State v. Hull*, No. CF-2019-218 (Mar. 1, 2021).

19. The Ottawa County District Court dismissed the case, concluding that Mr. Hull is an Indian and his conduct occurred in Indian country and that, as a result, the State lacked jurisdiction pursuant to *McGirt v. Oklahoma*, 140 S. Ct. 2453 (2020).

20. Despite its stipulations that Hull was an Indian whose charged conduct occurred within the Eastern Shawnee Reservation, and despite its failure to submit any evidence of clear Congressional intent to disestablish the Eastern Shawnee Reservation and its stipulations to the same, the State appealed the dismissal. On appeal, the State disregarded the binding Supreme Court precedent of *McGirt v. Oklahoma* and asserted arguments it did not make to the Ottawa County District Court.

21. The Eastern Shawnee Tribe participated as *amicus curiae* in the appeal because it recognized the threat of irreparable harm to its sovereignty and right to self-government by the State's repeated attempts to assert unlawful criminal jurisdiction in the Eastern Shawnee Tribe's Indian country and the Indian country of its immediate neighbors, based on arguments that disregard the holding in *McGirt,* that were not raised in the trial court, and despite the clear Ottawa County District Court rulings that the State lacks criminal jurisdiction because the Eastern Shawnee, Miami, and Ottawa Reservations are Indian country.

22. The appeal in *Hull* sat idle before the Oklahoma Court of Criminal Appeals after briefing was complete, without an order staying proceedings or other procedurally regular

indication to the parties, while the State submitted dozens of petitions for certiorari to the United States Supreme Court asking it to overturn *McGirt*.

23. The United States Supreme Court issued an opinion in *Oklahoma v. Castro-Huerta*, 142 S.Ct. 2486 (2022), in which it determined that the State possesses concurrent criminal jurisdiction over the conduct of non-Indians in Indian country.

24. The State has pursued and is currently pursuing unlawful criminal prosecution of Indian defendants in the Indian country of all of northeast Oklahoma, including within the Eastern Shawnee, Ottawa, and Miami Reservations. *See State v. Leoppard*, No. CF-2019-194 (Nov. 12, 2020) (Miami Reservation); *See State v. Hull*, No. CF-19-218 (Feb. 11, 2021) (Eastern Shawnee Reservation); *State v. Lee*, No. CF 2021-12, (Mar. 5, 2021) (Miami Reservation); *State v. Brester,* No. CF-2020-129 (Mar. 2, 2021) (Miami and Ottawa Reservations); *State v. Spurgeon*, No. CM-2020-519 (Mar. 8, 2021) (Ottawa Reservation); *State v. Dixon*, No. CF-2020-72 (June 28, 2021) (Ottawa Reservation).

25. Although the defendant in *Hull* is an Indian, on October 21, 2022, the Oklahoma Court of Criminal Appeals in *State v. Hull*—after briefing by the parties and the *amicus curiae* Tribe was complete—ordered the parties in that case to provide supplemental briefing on questions on the implications of the *Castro-Huerta* decision—a case that dealt with State jurisdiction over non-Indians in Indian country. A concurrence to the Order for Supplemental Briefing specifically directed the parties to analyze the *Hull* prosecution in light of the *dissent* in *McGirt* and the decision in *Solem*, which the Supreme Court in *McGirt* expressly overturned.

26. Recognizing the State's intent to disregard and even undermine the holding in *McGirt* and the threat of irreparable harm to its sovereignty, the Eastern Shawnee Tribe, along with the Miami Tribe of Oklahoma, the Muscogee Nation, and the Seminole Nation of Oklahoma,

filed amicus briefs in the *Hull* appeal explaining that *Castro-Huerta* did nothing to change the application of *McGirt* to preclude State criminal jurisdiction over Indians in Indian country. The United States was also granted leave to participate as *amicus curiae*.

27. On February 8, 2023, before the United States filed its amicus brief in the matter, the State moved to dismiss its appeal in *Hull*, suggesting that the record in that case was "simply insufficient" to render that case "an appropriate vehicle for litigation of the important issues" that it hopes to appeal to the Oklahoma Court of Criminal Appeals.

28. On March 3, 2023, Defendant Drummond, memorializing an earlier conversation, gave written instruction to Defendant Pewitt, attached to this complaint as Appendix A, requiring that State jurisdiction be exercised within the Eastern Shawnee Reservation, which is a directive to continue to unlawfully assert State criminal jurisdiction over Indians in Indian country. Defendant Drummond did so despite 1) the Supreme Court's ruling in *McGirt*; 2) the State's stipulations before the Ottawa County District Court that the Eastern Shawnee Reservation was established and the State's failure to produce any evidence that the Reservation was ever disestablished; and 3) multiple Ottawa County District Court decisions confirming that the Reservation has never been disestablished.

29. In the Letter of March 3, 2023, Defendant Drummond made explicit his intent to undermine *McGirt* 1) by stating that "we are initiating appeals, where appropriate, of *McGirt* dismissals by District 13 judges," and 2) by indicating that if District 13 judges "continue[] to dismiss cases and release[] defendants based on *McGirt*," his office "will take appropriate legal action, including filing an extraordinary writ in the OCCA."

30. On March 9, 2023, the Oklahoma Court of Criminal Appeals granted the State's motion to dismiss its appeal in *State v. Hull*. A 5-page concurrence to the Order Granting Motion

to Dismiss Appeal suggests the intent by at least one judge of that court to ignore the *McGirt* decision in future reservation boundary cases.

31. The Eastern Shawnee Tribe recognizes the imminent and express threat of unlawful State prosecution of Indians within the Eastern Shawnee Reservation and the Indian country of its closely neighboring tribes.

32. The State Defendants' actions are frustrating the efforts of the Tribe to prosecute offenders under its jurisdiction and to ensure prosecution of offenders under federal jurisdiction on the Reservation.

33. The Tribe has no adequate remedy at law.

**<u>Count I</u>**

**Declaratory Judgement, 28 U.S.C. § 2201**

34. The Tribe realleges paragraphs 1 through 33 and incorporates them by reference.

35. A long-standing body of federal statutory and decisional law prohibits state courts in Oklahoma from exercising criminal jurisdiction over Indian conduct in Indian country. That body of federal law includes, without limitation:

a. The Supremacy Clause of the U.S. Constitution, art. VI, § 2, which provides that "the Laws of the United States . . . and all Treaties made . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby . . . ."

b. The 1867 Treaty, which established the Eastern Shawnee Reservation;

c. 18 U.S.C. §§ 1151 and 1152, which statutorily preclude state jurisdiction and the application of state law in "Indian country," defined as "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and in including rights-of-way running

through the reservation." This definition applies to questions of both criminal and civil jurisdiction. *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 207 n.5 (1987) (citing *DeCoteau v. District County Court*, 420 U.S. 425, 427 n.2 (1975). And it precludes the exercise of state criminal jurisdiction within Indian country absent a express grant from Congress;

d. *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), which held that once a federal reservation is established, it remains Indian country unless Congress expressly acts to disestablish it;

e. The Oklahoma Enabling Act of 1906, 34 Stat. 267, and the Oklahoma Constitution, art. I, § 3, in which the State of Oklahoma "forever" disclaimed all right and title to "all lands lying within [the State's] limits owned or held by any Indian, tribe, or nation." The disclaimer disclaims both proprietary and governmental authority. *Seneca-Cayuga Tribe of Oklahoma*, 874 F.2d at 710, 716; *Indian Country, USA, Inc. v. Oklahoma tax Comm'n*, 829 F.2d 967, 976-81 (10th Cir. 1987).

f. 25 U.S.C. §§ 1321-1326, which prescribes the exclusive means by which the State of Oklahoma may exercise criminal jurisdiction over Indians within Indian country in Oklahoma. The State of Oklahoma has never taken steps to acquire criminal jurisdiction under Public Law 280. And Indian tribes in the State of Oklahoma have never consented to State jurisdiction over their reservations pursuant to 25 U.S.C. §§ 1321-1326.

36. The Eastern Shawnee Tribe of Oklahoma has never consented to state jurisdiction over its Reservation.

37. State Defendants have asserted, and continue to assert, State criminal jurisdiction over Indian defendants for conduct in the Eastern Shawnee Reservation.

38. The Tribe requests a declaration under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, that

a. The Eastern Shawnee Reservation was established, never disestablished, and exists today;

b. The Eastern Shawnee Reservation constitutes Indian country for the purpose of 18 U.S.C. §§ 1151 and 1152; and

c. The exercise of State criminal jurisdiction over Indians on the Eastern Shawnee Reservation violates federal law and the Tribe's sovereignty over its territory.

39. The Tribe requests a judicial declaration that the State Defendants must give effect to the United States Supreme Court's decision in *McGirt v. Oklahoma* and immediately cease attempting to assert unlawful State criminal jurisdiction over Indians on the Eastern Shawnee Reservation.

**<u>Count II</u>**

**Writ of Prohibitory Injunction, 28 U.S.C. § 2202**

40. The Tribe realleges paragraphs 1 through 39 and incorporates them by reference.

41. The Tribe requests a permanent injunction against the State Defendants' prosecution of Indians in Indian country, including within the Eastern Shawnee Reservation.

42. To obtain a permanent injunction the Tribe must prove 1) actual success on the merits, 2) irreparable harm unless the injunction is issued, 3) the threatened injury outweighs the harm that the injunction may cause the opposing party, and 4) that the injunction, if issued, will

not adversely affect the public interest. *Prairie Band Potawatomi Nation v. Wagnon,* 476 F.3d 818, 822 (10th Cir. 2007).

43. The Eastern Shawnee Tribe prevails on the merits because the State of Oklahoma does not have criminal jurisdiction over Indians for conduct occurring within Indian country. Accordingly, the Ottawa County District Court ruled that because there is no evidence of an express Congressional act disestablishing the Eastern Shawnee Reservation, it is Indian country under *McGirt*, and the State lacks jurisdiction to prosecute Indian defendants for conduct occurring on the Eastern Shawnee Reservation.

44. If they are not enjoined, the imminent threat of the State Defendants' unlawful prosecution of Indian defendants for conduct occurring on the Eastern Shawnee Reservation will cause irreparable injury to the Eastern Shawnee Tribe because Indian tribes are irreparably harmed by unlawful invasions of their sovereignty and infringement on their ability to self-govern. *See, e.g., Comanche Nation v. United States,* 393 F. Supp. 2d 1196, 1205-06, 1210-11 (W.D. Okla. 2005).

45. The Tenth Circuit has "repeatedly stated" that enforcing state criminal jurisdiction on Indian land is an "invasion of tribal sovereignty" constituting irreparable injury. *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1255-56 (10th Cir. 2006). State encroachments on tribal sovereignty cause irreparable injury because the harm to tribal self-government is "not easily subject to valuation," and because "monetary relief might not be available because of the state's sovereign immunity." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001); *see also Choctaw Nation of Oklahoma v. Oklahoma*, 724 F. Supp. 2d 1182, 1187 (W.D. Okla. 2010) (noting that remedies at law are inadequate to remedy illegal assertions of state jurisdiction in Indian country); *Winnebago Tribe of Nebraska v. Stovall,* 205 F. Supp. 2d 1217,

1222 (D. Kansas 2002) (monetary damages are not sufficient "to undo the damage" caused by encroachments on tribal sovereignty).

46. The public interest and the balance of equities require that the State Defendants' prosecution of Indian defendants in Indian country be enjoined. *See, e.g., United Keetoowah Band of Cherokee Indians v. Oklahoma*, 927 F.2d 1170, 1182 (10th Cir. 1991) (affirming a permanent injunction enjoining the Tulsa County District Attorney from exercising criminal jurisdiction over a single Indian allotment in Indian country).

47. The Anti-Injunction Act does not bar an injunction against state proceedings that violate federal jurisdictional law and threaten Tribal sovereignty because: 1) the "necessary in aid of its jurisdiction" exception applies, *see, e.g., Ute VI,* 790 F.3d at 1000; *Sycuan Band of Mission Indians v. Roache*, 54 F.3d 535, 540 (9th Cir. 1994); and 2) 28 U.S.C. § 1362 authorizes federal courts to enter injunctions against such state proceedings, *see Ute Indian Tribe v. Lawrence*, 875 F.3d 539, 548 n. 5 (10th Cir. 2017); *Sac and Fox Nation v. Hanson*, 47 F.3d 1061, 1063 n. 1 (10th Cir. 1995).

48. The State Defendants must be enjoined from attempting to assert criminal jurisdiction over Indians for conduct occurring on the Eastern Shawnee Reservation.

**PRAYER FOR RELIEF**

Based on the allegations above, the Tribe prays that the Court enter an Order as follows:

1. Declaring that the Eastern Shawnee Reservation was lawfully established and has never been disestablished or diminished by Congress and exists today;

2. Declaring that the Eastern Shawnee Reservation constitutes Indian country for the purpose of criminal jurisdiction, specifically within the meaning of 18 U.S.C. §§ 1151 and 1152;

3. Declaring that the State of Oklahoma lacks jurisdiction over Indian criminal conduct on the Eastern Shawnee Reservation;

4. Enjoining the State Defendants from:

a. Prosecuting Indians for alleged criminal conduct on the Eastern Shawnee Reservation;

b. Asserting in any court, administrative forum, other law-applying forum, or otherwise expressing publicly that the Eastern Shawnee Tribe Reservation does not exist, that the State possesses criminal jurisdiction to prosecute Indians on the Eastern Shawnee Reservation, that the Eastern Shawnee Reservation is not Indian country for the purpose of federal criminal jurisdiction, or that the Eastern Shawnee Tribe lacks any power of a sovereign Indian tribe over any part of the Eastern Shawnee Reservation;

c. Seeking, obeying, carrying out, issuing, enforcing, or otherwise treating as having any lawful force or effect, any order of any court which is inconsistent with the mandate issued by the United States Supreme Court in *McGirt v. Oklahoma* or the orders of this Court; and

d. Taking any other action inconsistent with the mandate of is Court;

5. Exercising continuing jurisdiction to ensure compliance with the Court's Order for as long as the Court deems appropriate;

6. Awarding the Tribe its reasonable attorneys' fees and costs incurred to protect its sovereign interests and jurisdiction from the State's illegal actions; and

7. Providing such other relief as this Court determines is appropriate.

Dated: March 21, 2023

By: s/ Joseph F. Halloran
Joseph F. Halloran, OBA #31905
James K. Nichols
Joy P. Parker
JACOBSON, MAGNUSON, ANDERSON & HALLORAN P.C.
180 East Fifth Street, Suite 940
St. Paul, Minnesota 55101
Phone: 651-644-4710
Email: jhalloran@thejacobsonlawgroup.com
jnichols@thejacobsonlawgroup.com
jparker@thejacobsonlawgroup.com

*Special Counsel for the Eastern Shawnee Tribe of Oklahoma*

Audrey Gardner, OBA #31373
10100 S. Bluejacket Rd.
Wyandotte, OK 74370
Phone: 918-238-5151
Email: adixon@estoo.net

*Counsel for the Eastern Shawnee Tribe of Oklahoma*

# VERIFICATION

STATE OF OKLAHOMA )<br>
)ss.<br>
COUNTY OF OTTAWA )

I, Glenna Wallace, being duly sworn, depose and state as follows:

1. I am the Chief of the Eastern Shawnee Tribe of Oklahoma, the Plaintiff in the case captioned The Eastern Shawnee Tribe of Oklahoma v. Gentner Drummond and Douglas Pewitt, United States District Court for the Northern District of Oklahoma.
2. I have authorized the filing of this complaint.
3. I have reviewed the allegations made in the complaint, and to those allegations of which I have personal knowledge, I believe them to be true.
4. As to those allegations of which I do not have personal knowledge, I rely on Appendix A to the Complaint, and I believe them to be true.

Glenna Wallace

Glenna Wallace, Chief, Eastern Shawnee Tribe of Oklahoma

Subscribed and sworn before me this 21st day of March, 2023.

Kecia Nesvold

Notary Public

Notary Public Oklahoma<br>
OFFICIAL SEAL<br>
KECIA NESVOLD<br>
Commission Exp. 05-16-2023<br>
Commission #11004500