# United States District Court
## for the Northern District of Oklahoma

Case No. 23-cv-105-JDR-SH

BASE FILE

Consolidated with:
Case No. 23-cv-106-JDR-CDL
23-cv-107-JDR-SH
23-cv-111-JDR-SH
23-cv-437-GKF-SH

THE EASTERN SHAWNEE TRIBE OF OKLAHOMA,

*Plaintiff*,

— and —

THE OTTAWA TRIBE OF OKLAHOMA; THE MIAMI TRIBE OF OKLAHOMA; THE SENECA-CAYUGA NATION; THE MODOC NATION,

*Consolidated Plaintiffs*,

versus

GENTNER DRUMMOND, *in his capacity as Attorney General of Oklahoma*; DOUGLAS PEWITT, *in his capacity as District Attorney for District 13*,

*Defendants/Consolidated Defendants.*

## OPINION AND ORDER

"Article III delimits the jurisdiction of federal courts, allowing us to consider only actual cases or controversies." *Kansas Jud. Rev. v. Stout*, 562 F.3d 1240, 1245 (10th Cir. 2009) (quoting U.S. CONST. art II, § 2, cl. 1). The Plaintiffs in this consolidated action—the Eastern Shawnee Tribe of Oklahoma, the Ottawa Tribe of Oklahoma, the Miami Tribe of Oklahoma, and the

No. 23-cv-105
c/w 23-cv-106, 23-cv-107, 23-cv-111, 23-cv-437

Seneca-Cayuga Nation[1]—suggest that an "actual controversy" exists between the Tribes and the Defendants, who are officials of the State of Oklahoma. Dkt. 2 at ¶ 1.[2] But this suggestion is belied by the briefs filed in connection with the motions for partial summary judgment now before the Court, three of which are not opposed at all, and not one of which is opposed in substance. *See* Dkts. 47-50; Dkts. 51, 52, 54 (indicating Defendants "are not opposing partial summary judgment"); Dkt. 53 (contending that the question of the continued existence of the Ottawa Reservation is now moot). There appears to be no real argument between the parties about the relief sought by the Tribes, and the Court cannot, and will not, issue a judicial declaration over a matter that is not the subject of "real, earnest and vital" dispute. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Muskrat v. United States*, 219 U.S. 346, 351, 359 (1911)) (internal quotation marks omitted). Accordingly, Plaintiffs' motions for partial summary judgment are denied.

I

Plaintiffs are four federally recognized Indian tribes, each of which were granted reservations by acts of Congress. The Tribes allege that their respective reservations were never disestablished and that, as a result of the Supreme Court's ruling in *McGirt v. Oklahoma*, 591 U.S. 894 (2020), the State Defendants are without jurisdiction to prosecute crimes committed by Indians on the Tribes' reservations. The Tribes claim that the State of Oklahoma has continued to unlawfully assert jurisdiction over Indians in Indian country notwithstanding the Supreme Court's ruling in *McGirt*. In an effort

---

[1] The Modoc Nation dismissed its claims against Defendants and is no longer a party to this action. *See* Dkt. 34.

[2] This citation refers to the petition filed by the Eastern Shawnee Tribe. Identical language was used in the complaints filed by the Ottawa Tribe, the Miami Tribe, and the Seneca-Cayuga Tribe.

No. 23-cv-105
c/w 23-cv-106, 23-cv-107, 23-cv-111, 23-cv-437

to quell the "imminent and express threat of unlawful State prosecution of Indians" within their reservations, the Tribes filed complaints seeking (1) judicial declarations that the State Defendants must give effect to the Supreme Court's decision in *McGirt* and cease attempting to assert criminal jurisdiction over Indians on the Tribes' respective reservations, and (2) injunctions prohibiting the State Defendants from attempting to assert criminal jurisdiction over Indians on the Tribes' reservations. *E.g.*, Dkt. 2 at ¶¶ 31, 39, 48.

In their answers to the Tribes' complaints, the State Defendants denied the existence of any justiciable cases or controversies. Dkts. 15 at ¶ 3, 16 at ¶ 3, 17 at ¶ 1, 18 at ¶ 1. Then, the State Defendants joined the Tribes in jointly stipulating to, among other things, the nature of the relationship between the Tribes and the United States, the authority exercised by the Tribes, the language contained in certain pieces of federal legislation, the present status of the Tribes' reservations, and whether the Tribes were subject to certain legislation. *E.g.*, Dkts. 35-38.[3]

After the joint stipulations were filed, the Tribes filed motions for summary judgment based, in significant part, on those stipulations. *See* Dkts. 47 at 7-11, 48 at 7-11, 49 at 7-11, and 50 at 7-11.[4] In those motions, the Tribes ask this Court to enter orders declaring the continued existence of the Tribes' respective reservations. *See* Dkts. 47-50. They argue that their reservations were established by treaties with the United States, were not disestablished or diminished by Congress, Oklahoma statehood, or federal termination, and continue to exist today. *See id.* Although the Tribes avow there is "no dispute" regarding the establishment of their reservations, the boundaries of those reservations, or the continued existence of those reservations, they

---

[3] In response to a Court order, the parties later re-submitted their stipulations with supporting authority and evidence. Dkts. 39, 42-45.

[4] All citations use CM/ECF pagination.

3

nevertheless urge that a declaration regarding the continued existence of their reservations is necessary because the State Defendants "continue to bring criminal prosecutions that challenge the continued existence of [the Tribes' reservations] by claiming State jurisdiction over Indian conduct that occurs within [those reservations]." Dkt. 47 at 6.

The State Defendants offer little in the way of opposition to the Ottawa Tribe's motion. Rather than oppose the merits of that motion, the State Defendants simply note that the Oklahoma Court of Criminal Appeals has already determined that the Ottawa reservation is Indian country in *State v. Brester*, 2023 OK CR 10, ¶ 25, 531 P.3d 125, 135. Dkt. 53 at 1. They represent that they have an obligation to abide by that ruling unless and until it is reversed, and they make no arguments urging that *Brester* was wrongly decided and should be disregarded. *Id.* at 1-5. Instead, they argue only that the Ottawa Tribe's request for relief is now moot due to the state court's ruling in *Brester*.

If the State Defendants do little to oppose Ottawa Tribe's motion, they do even less to oppose the motions filed by the remaining Tribes. The State Defendants affirmatively represent that they do not oppose the motions for partial summary judgment filed by the Eastern Shawnee Tribe, the Seneca-Cayuga Nation, or the Miami Tribe. *E.g.*, Dkt. 51 at 1, n.1. And they do not deny any of the undisputed facts set forth by the Tribes. At most, the State Defendants deny any knowledge of "active criminal prosecutions in violation of *McGirt*" occurring within the Eastern Shawnee, Seneca-Cayuga, and Miami Tribes' reservations. *Id.* at 3. Although the State Defendants acknowledge that they have previously raised arguments regarding the disestablishment and termination of other reservations, they note that the Oklahoma Court of Criminal Appeals has rejected those arguments, and that the State Defendants would be "hard-pressed to make such arguments again." *Id.* at 4. The State Defendants expressly disavow any intent to "contest a declaration by this Court that the lands contained within the [Tribes'

reservations] maintain their status as Indian country," *id.* at 5, and ask the Court to rule on the Tribes' motions in furtherance of the Parties "mutual desire . . . to clarify criminal jurisdiction related to the prosecution of crimes committed within unadjudicated historic tribal boundaries," including the Tribes' reservations. *Id.* at 3.

In view of the State's arguments (or lack thereof), it is perhaps unsurprising that only the Ottawa Tribe filed a reply in support of its motion. *See* Dkt. 55 at 2. In that reply, the Ottawa Tribe acknowledges that the decision in *Brester* is binding on the State Defendants and characterizes the State Defendants' concession regarding that decision as "an appropriate step," but argues that the case remains a live controversy because *Brester* does not "entirely foreclose" the "ongoing threat of state criminal prosecution attempts that infringe on the Tribe's ability to self-govern." *Id.* at 2. The Ottawa Tribe maintains that the Court has the authority to "mak[e] its own determination of federal law on the continued existence of the Tribe's Reservation" when determining the need for prospective relief. *Id.* at 4.

II

"The case or controversy requirement is a constitutional imperative." *Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1242 (10th Cir. 2011) (citing *Flast v. Cohen*, 392 U.S. 83, 95-97 (1968)). Although the precise boundaries of that requirement are, at times, "murky," several aspects of this jurisdictional requirement are well-established. *Id.* First, a plaintiff must have standing to seek relief from the courts, meaning that a plaintiff must establish that he (i) "suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Second, unless certain exceptions apply, the dispute between the parties must remain "live," and the parties must retain a legally cognizable interest in the outcome at all stages of the

litigation. *Lucero*, 639 F.3d at 1242. (quoting *U.S. Parole Commission v. Geraghty*, 445 U.S. 388, 396 (1980)).[5] And third, the case-or-controversy requirement is jurisdictional; a court may not adjudicate a case that was never in dispute or has become moot no matter how vigorously the parties dispute the issues and no matter how significant those issues may be to the parties. *See Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013) (recognizing that a court may not resolve a dispute when a plaintiff lacks standing, and that "it is not enough that the party invoking the power of the court have a keen interest in the issue"); *Building & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1491 (10th Cir. 1993).

The case or controversy requirement serves two purposes: First, it "limits the business of federal courts to 'questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process.'" *Geraghty*, 445 U.S. at 396 (quoting *Flast*, 392 U.S. at 95). Second, it "defines the 'role assigned to the judiciary . . . to assure that the federal courts will not intrude into areas committed to the other branches of government.'" *Id.* (quoting *Flast*, 392 U.S. at 95). It is this Court's obligation to ensure that these two aims are being served by the present existence of an actual, live controversy. *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 73 (1997) (recognizing that courts have an obligation to ensure authority over the questions presented before them).

The briefing here raises serious doubts on the question of whether this lawsuit involves a true dispute presented in an adversarial context. The State Defendants have all but conceded the Tribe's position. The only substantive point of contention is whether there are any "active criminal prosecutions in

---

[5] The doctrine of mootness "has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997) (internal quotation marks omitted).

No. 23-cv-105
c/w 23-cv-106, 23-cv-107, 23-cv-111, 23-cv-437

violation of *McGirt*." Dkt. 51 at 3. The Tribes argue that these prosecutions are ongoing; the State Defendants are simply "not aware" of these ongoing proceedings. *Id.*[6] Far from being a vigorously contested dispute, the case before the Court seems borderline collaborative, as evidenced by the State Defendants' concession of the parties' "mutual desire . . . to clarify criminal jurisdiction related to the prosecution of crimes committed within unadjudicated historic tribal boundaries . . . ." Dkt 51 at 3.

The Supreme Court has cautioned that Courts should look askance at cases that, though couched as disputes, bear all the hallmarks of cooperative agreements. *See Arizonans for Off. Eng.*, 520 U.S. at 71 (noting that the court of appeals did not consider cooperation between the parties as it pertained to "the federal courts' lack of authority to act in friendly or feigned proceedings," and recognizing that the evidence of cooperation to "avoid otherwise certain mootness, bore close inspection"). This Court will heed that warning. On the record before it, the Court can find no evidence of a live, ongoing controversy between the parties. Because the Court is jurisdictionally precluded from granting summary judgment in the absence of a controversy, the Tribes' motions for summary judgment are denied.

### III

For the reasons set forth above, the Court denies the Tribes' motions for partial summary judgment. The parties are directed to file simultaneous cross-briefs addressing this Court's jurisdiction to resolve the Tribes' claims for relief on March 17, 2026.

---

[6] There is some evidence of criminal charges that had been brought before this case was filed. *See* Dkt. 47-1. But the Tribes have not presented evidence of ongoing criminal prosecutions in their statements of undisputed facts.

No. 23-cv-105
c/w 23-cv-106, 23-cv-107, 23-cv-111, 23-cv-437

DATED this 17th day of February 2026.

_____
John D. Russell
*United States District Judge*